1    E-Filed 10/13/15

2

3

4                        UNITED STATES DISTRICT COURT

5                      NORTHERN DISTRICT OF CALIFORNIA

6

7    SAM SOHN,                                Case No.  14-cv-02913-HRL
                    Plaintiff,
8
          v.
9                                             **ORDER GRANTING DEFENDANT'S
                                              MOTION TO ENFORCE SETTLEMENT**
10   WELLS FARGO BANK, NATIONAL
     ASSOCIATION,                             Re: Dkt. No. 26
11                  Defendant.

12          Plaintiff Sam Sohn, currently pro se, sues Wells Fargo Bank, National Association for

13   statutory damages under the Telephone Consumer Protection Act and the Rosenthal Fair Debt

14   Collection Practices Act.  She alleges Wells Fargo harassed her with hundreds of illegal phone

15   calls based on the mistaken belief that she was delinquent on her mortgage payments.  The parties

16   expressly consented to magistrate jurisdiction.

17          Wells Fargo moves to enforce a settlement agreement.  Sohn opposes.  The court read the

18   parties' briefs and researched the governing law.  The court has also considered the arguments

19   heard on September 15, 2015.  The motion to enforce settlement is granted.

20                                    **Background**

21          The parties participated in private mediation in February of 2015.  Sohn presented a signed

22   document titled "Plaintiff's Settlement Demand" at the end of the mediation.  Dkt. No. 28 at 2.

23   The demand gave Wells Fargo seven days to respond.  Dkt. No. 28-1 at 2.  One of Sohn's lawyers

24   asked six days later by email whether Wells Fargo would accept the settlement, and Wells Fargo's

25   lawyer responded, "We have a deal."  Dkt. No. 28 at 3; Dkt. No. 28-2 at 2.

26          Sohn, meanwhile, had received and reviewed the mediation brief her lawyers had prepared.

27   The brief asserted that, per discovered evidence, Sohn was likely entitled to at least $1,800,000 in

28   statutory damages.  Dkt. No. 40 at 37.  The brief eventually made Sohn feel, retrospectively, that

*United States District Court*
*Northern District of California*

her lawyers had "deceived and misled" her by "conceal[ing]" facts that might have supported a more favorable settlement. Dkt. No. 40 at 2. Sohn refused to memorialize the settlement terms by signing a more formal document. Dkt. No. 26 at 4. Sohn's relationship with her own lawyers deteriorated and they eventually withdrew from the case. Dkt. No. 24.

Wells Fargo discharged the balance of Sohn's mortgage in accord with the settlement demands. Dkt. No. 27 at 1-2. The settlement, if valid, requires Sohn "to waive any and all claims arising from the facts or law in" this case, Dkt. No. 28-1 at 2, but she has not requested dismissal.

Wells Fargo asks the court to enforce the settlement by dismissing this case. Sohn asserts no valid contract waived her right to continue suing Wells Fargo for any additional damages that might be justified by future discovery in this case, Dkt. No. 40 at 2-3, and she raises several supporting arguments: (1) Wells Fargo was performing a unilateral favor when it discharged her mortgage and so Wells Fargo should receive no credit for forgiving that debt, Dkt. No. 40 at 3, 10; (2) she did not agree to the tax-liability and credit-score consequences of her own settlement offer and so there was no true agreement, Dkt. No. 40 at 4; (3) her lawyers conspired with Wells Fargo to obtain her settlement consent through duress and fraud, Dkt. No. 40 at 4-6; (4) Wells Fargo misled and deceived Sohn when it produced relevant call records one week before mediation, Dkt. No. 40 at 5-6; (5) the portion of the settlement that requires Wells Fargo to pay her lawyers' fees is an enforceable and independent contract, Dkt. No. 40 at 9. Sohn also discusses factual allegations that relate to her case in general, but which do not relate to this motion. Dkt. No. 40 at 8-9.

### Discussion

Settlement agreements are contracts interpreted under the laws of the forum state. *United Commercial Ins. Serv., Inc. v. Paymaster Corp.*, 962 F.2d 853, 856 (9th Cir. 1992). A court has inherent power to enforce a valid settlement agreement in a case pending before that court. *Dacanay v. Mendoza*, 573 F.2d 1075, 1078 (9th Cir. 1978).

A valid contract in California has four elements: (1) parties capable of contracting; (2) consent; (3) a lawful object; and (4) a sufficient cause or consideration. Cal. Civ. Code § 1550. Sohn is capable of contracting because she is not a minor and she is of sound mind. Cal. Civ. Code § 1556. A party may unilaterally rescind a contract when consent was obtained through

1
2
3
4
5
6

duress or fraud, but only when the duress or fraud was committed or induced by either another contracting party or someone "jointly interested" with another contracting party.  Cal. Civ. Code § 1689; *Chan v. Lund*, 188 Cal. App. 4th 1159, 1174 (2010).  Accordingly, duress or fraud inflicted on a party by that party's own lawyer does not justify rescission unless another contracting party either was "jointly interested" with the lawyer or induced the lawyer's bad acts.  Cal. Civ. Code § 1689(b)(1); *Chan*, *supra*.

7
8
9
10
11
12
13
14
15
16
17

Sohn claims she did not agree to the tax-liability and credit-score consequences of her own offer and therefore she reached no true agreement with Wells Fargo.  Dkt. No. 40 at 4.  But one of the terms in Sohn's settlement offer specifically contemplated credit score consequences: "[Wells Fargo] will agree to request tradeline deletion from all three major credit agencies, on any and all debts that were reported, relating or arising from [Sohn]'s Line of Credit with Wells Fargo."  Dkt. No. 28-1 at 2.  And Sohn admitted at the hearing that she was the person who raised the possibility of Wells Fargo discharging her mortgage in exchange for settlement of this case.  The court finds Sohn consented to her own settlement offer and that, as an adult of sound mind, she was capable of making that offer.  The settlement of this case is a lawful object for a contract, and each party received sufficient consideration under the terms of Sohn's offer.  Sohn and Wells Fargo therefore formed a valid settlement contract when Wells Fargo timely accepted Sohn's offer by email.

18
19
20
21
22
23

Sohn relies on a letter from Wells Fargo to argue the discharge of her mortgage was a unilateral favor done by Wells Fargo.  The letter stated that any debt owed on Sohn's mortgage would be forgiven and that "[t]here [was] no action" required by Sohn before the mortgage would be extinguished.  Dkt. No. 40 at 12.  Sohn believes this language shows Wells Fargo did not expect any reciprocal performance in return for the discharge of her mortgage.  The court disagrees.  The letter simply informed Sohn she would soon receive one of the benefits due to her under the parties' settlement.  The letter did not relieve Sohn of her own settlement obligations.

24
25
26
27
28

Sohn similarly argues that Wells Fargo must pay the fees of Sohn's former lawyers because, even though the settlement is generally invalid, that specific settlement term is an independent and enforceable contract between Wells Fargo and her former lawyers.  True, the settlement does oblige Wells Fargo to "separately" pay $45,000 to Sohn's former lawyers, Dkt.

United States District Court
Northern District of California

United States District Court
Northern District of California

1   No. 28-1 at 2, but that word does not transform the fees-payment term into a separate and

2   independently enforceable contract.  Rather, that word helps to clarify that Wells Fargo should pay

3   the fees of Sohn's former lawyers directly to those lawyers.  Dkt. No. 28-1 at 2; *see* Dkt. No. 40 at

4   73.

5        The argument that Wells Fargo misled or deceived Sohn has no factual support.  Sohn's

6   brief claims it was deceptive when Wells Fargo produced 2,000 pages of relevant call records one

7   week prior to mediation.  Dkt. No. 40 at 5.  The undersigned asked Sohn at the hearing to clarify

8   how or why this was deceptive, and Sohn answered only that it was.  The undersigned also asked

9   Sohn, repeatedly, what she thought Wells Fargo did wrong.  Sohn responded only that she

10   believed the production of 2,000 pages one week prior to mediation was a deceptive act.

11        The court disagrees.  The mediation brief prepared by Sohn's lawyers stated that her

12   lawyers reviewed the newly produced records and that those records appeared to support Sohn's

13   claims.  Dkt. No. 40 at 36.  Sohn's bargaining strength in the mediation was not prejudiced by the

14   production of these records and it does not tend to show that Wells Fargo misled anyone.  Sohn's

15   contrary belief is speculative.  Sohn, similarly, speculates that Wells Fargo has deceptively failed

16   to produce relevant records that could easily be produced.  Dkt. No. 40 at 5.  But one of Sohn's

17   former lawyers explained in a letter that further production was not feasible because Sohn has

18   been unable to remember or look up several of her old cell phone numbers, and records related to

19   an unknown phone number cannot feasibly be produced.  Dkt. No. 40 at 40-41.  The lawyer also

20   explained in detail that further production, even if it were possible, was unlikely to strengthen

21   Sohn's case, because previous discovery had already shown that an unexpectedly high fraction of

22   the calls made by Wells Fargo did not violate the law.  Dkt. No. 41-42.  The court sees no reason

23   to suspect Wells Fargo of deceptive discovery practices.

24        Sohn's final argument—that Wells Fargo conspired with her lawyers to obtain her consent

25   to an unfavorable settlement through duress and fraud—also lacks factual support.  Sohn's brief

26   cites an email from one of her lawyers as evidence of the conspiracy, but the email simply states

27   that the lawyer does not understand why Sohn had recently accused him of deceiving her.  Dkt.

28   No. 40 at 4, 19.  Sohn also cites to a transcript from a hearing on May 12, 2015; she stated during

United States District Court
Northern District of California

1    the hearing that her own lawyers were "dishonest in" this case.  Dkt. No. 40 at 15-16.  She

2    believes that her statement should be taken as true because no one objected to the statement during

3    the hearing.  Dkt. No. 40 at 2.  Sohn also appears to refer to the letter from her attorney that

4    describes the weaknesses in her case as evidence that her lawyers conspired with Wells Fargo.

5    Dkt. No. 40 at 4.  Sohn also quotes an email that admits records were produced to facilitate

6    mediation, and she believes this proves Wells Fargo conspired with her lawyers to wrongfully

7    obtain her settlement consent.  Dkt. No. 40 at 4-5.  And a letter sent by Sohn to her lawyers on

8    April 7, 2015 stated that she experienced duress during the mediation because she believed her

9    case was worth $2,000,000 and she was upset to hear her lawyers say it was actually worth

10   $200,000.  Dkt. No. 40 at 47.

        Every citation and quotation relied on by Sohn tends to show, if anything, that Wells Fargo

11   and Sohn's then-lawyers used lawful and honest methods to resolve this case through private

12   mediation.  The court sees no reason to believe Wells Fargo or Sohn's former lawyers entered any

13   kind of conspiracy.  Sohn's former lawyer did nothing improper or collusive when he explained to

14   her, in detail, why her case had become worth $200,000 instead of $2,000,000.  Dkt. No. 40 at 39-

15   42.  As mentioned, the undersigned repeatedly asked Sohn at the hearing on this motion what

16   Wells Fargo did that seemed wrong to her, and she stated only that the production of documents

17   one week prior to mediation seemed deceptive—it is neither deceptive nor evidence of any kind of

18   conspiracy.  The court sees no evidence that Wells Fargo obtained Sohn's settlement consent

19   through fraud or duress.  The court also sees no evidence that Wells Fargo induced Sohn's former

20   lawyers to obtain her settlement consent through fraud or duress.  It also seems like Sohn's

21   lawyers had a joint interest not with Wells Fargo, but with Sohn—an email Sohn submitted

22   suggests her lawyers expected to receive more money if they earned her a more valuable

23   settlement.  Dkt. No. 40 at 19.

        Sohn does, at least, argue economic duress came from a source other than Wells Fargo: she

24   claimed during the hearing that her lawyers threatened in the midst of mediation to withdraw from

25   the case and sue her for their fees if she refused to settle.  But economic duress inflicted by a

26   party's own lawyer during mediation, absent any reason to believe a contracting party induced the

27

28

5

United States District Court
Northern District of California

1  duress or shared an interest with the lawyer, cannot justify contract rescission under California

2  law.  *Chan*, 188 Cal. App. 4th at 1174; *see* Cal. Civ. Code § 1689(b)(1).  Sohn has, at most,

3  attempted to show that her own lawyers inflicted some degree of economic duress on her, but she

4  has given no reason to suspect that Wells Fargo induced duress or shared an interest with her

5  lawyers.  She therefore has no valid reason to unilaterally rescind her settlement agreement with

6  Wells Fargo.  The court shall enforce it.

7       The court addresses one final issue.  A letter attached to Sohn's brief implies that Wells

8  Fargo has conditioned the further performance of its settlement obligations on the receipt of a

9  signed W9 form from Sohn.  Dkt. No. 40 at 48.  Wells Fargo admitted during the hearing on this

10  motion that it intends to require a signed W9 form from Sohn before it continues to perform under

11  the settlement.  Wells Fargo also admitted the parties did not discuss any such condition before

12  they settled this case.  The court finds the settlement agreement includes no such condition.

### Conclusion

13       Sohn's settlement demand became a valid settlement agreement when Wells Fargo

14  accepted it.  Sohn has no justification to unilaterally rescind the settlement agreement.  Wells

15  Fargo shall, pursuant to the settlement agreement, pay $45,000 to Sohn's lawyers and make its

16  best efforts to secure tradeline deletion for any and all debts "reported, relating or arising from"

17  Sohn's line of credit with Wells Fargo.  Wells Fargo shall not require Sohn to submit a signed W9

18  form before it performs these obligations.  Sohn waived any and all claims "arising from the facts

19  or law in" this case when Wells Fargo accepted her settlement demand.  The court shall therefore

20  dismiss this case with a subsequent judgment.  The court shall retain jurisdiction for three months

21  to enforce the terms of the settlement agreement.

22       **IT IS SO ORDERED.**

23  Dated: 10/13/15



HOWARD R. LLOYD
United States Magistrate Judge